EDWIN H. COGGSWELL, APPELLEE, V. W. C. GRIFFITH ET AL., APPELLANTS.

1. **Real Estate:** SALE: PRINCIPAL AND AGENT. Where a party through his brother purchased the "north-west quarter and the south-west quarter of the north-east quarter of section twenty-six, township eleven, range six," etc., his brother well knowing that the grantor possessed but eighty acres of land in said section, viz.: the west half of the north-east quarter, and said purchaser afterwards sold and conveyed the north-west quarter of said section to a *bona fide* purchaser, *Held*, First, that the knowledge of the brother through whom the purchase was effected, being that of agent, was knowledge to the purchaser. Second, in an action by the actual owner of the north ·half of the north-west quarter of said section, such owner was entitled to the actual value of said land at the time of the conveyance to the *bona fide* purchaser. Third, that unpaid purchase money due from the *bona fide* purchaser would be applied in satisfaction of the claim of the land owner.

2. ——: ——: TITLE: MISDESCRIPTION: FRAUD. Where the title of real property is wrongfully obtained, as by a misdescription in the deed, and such real estate is conveyed, in fraud of the right of the owner, by such grantee, a court of equity will convert him into a trustee and compel him to account for the value of such property, and will follow the proceeds of such sale so long as they can be traced.

3. ——: PLEADING: PARTIES. *Held*, That the petition stated a cause of action, and that there was no misjoinder of defendants.

APPEAL from the district court of Lancaster county. Heard below before POUND, J.

*Marquett, Deweese & Hall,* for appellants, cited : *Burt v. Wilson,* 28 Cal., 632. *Durant v. Bacot,* 2 Beasley, 201. *Adams v. Stevens,* 49 Me., 362. *Durham v. Ins. Co.,* 22 Fed. Rep., 468. *Thompsonville Scale, etc., Co. v. Osgood,* 26 Conn., 16. *Ellis v. Hunnicut,* 71 Ga., 637.

*Brown & Ryan Bros.,* for appellee, cited : *Smith v. Sands,* 17 Neb., 498. Perry on Trusts, Sec. 847. *Blackburn v. Randolph,* 33 Ark., 119. *McKeighan v. Hopkins,* 19 Neb., 38.

MAXWELL, J.

The plaintiff brought an action against the defendants in the district court of Lancaster county, and alleges in his petition that, "on the first day of August, 1868, the United States, by its certain letters patent of that date, conveyed to one John Brown the north-west quarter of section twenty-six, township eleven north, range six east, 6th P. M., in Lancaster county, and state of Nebraska; and on the first day of August, 1869, the United States, by its certain other letters patent, conveyed to the said John Brown the north-east quarter of said section twenty-six; that on the 8th day of December, 1868, the said John Brown sold to one Hazelton S. Moore, the west half of the north-east quarter of said section twenty-six, and on the same day the said John Brown and Catharine, his wife, executed a warranty deed, whereby they intended to convey to the said Hazelton S. Moore the tract of land above described, and that only, and the said Moore supposed he was purchasing said last above described tract and no other; that the description of the land as written in the deed executed by the said John Brown and wife to the said Hazelton

S. Moore, was as follows: 'the north-west quarter and the south-west quarter of the north-east quarter of section twenty-six, township eleven, range six, in Lancaster county, in the state of Nebraska', instead of 'the north-west quarter of the north-east quarter and the south-west quarter of the north-east quarter of section twenty-six, township eleven, range six east, in Lancaster county, Nebraska,' as the same was intended to be, the words, 'of the north-east quarter' having been omitted from the description contained in the deed executed by the said Brown and wife to the said Moore as aforesaid, when they should have been inserted immediately after the words, 'the north-west quarter' where they first occur in said deed, by mistake of all the parties interested in said deed, and particularly of the grantors named therein, parties executing said deed supposing and believing that the description written in the deed conveyed only the eighty acres of land first herein described; that the consideration paid by the said Moore for the land conveyed to him by the deed executed by the said Brown and wife, as aforesaid, was four hundred dollars; said deed was filed for record in the county clerk's office of Lancaster county, on the 24th day of December, 1868, and was recorded in deed record D, at page 14; that on the 12th day of June, 1869, the said John Brown, for the consideration of four hundred dollars, conveyed by warranty deed, in which his wife joined, to Roger Mullins, the north half of the north-west quarter of said section twenty-six, which deed was filed for record in the county clerk's office of Lancaster county, on the 5th day of July, 1869, and said deed was recorded in deed record D, at page 601, of said county ; and on the 7th day of May, 1872, the said Roger Mullins, for the consideration of five hundred dollars, conveyed by deed with covenants of warranty to Spencer G. Chandler, the north half of the north-west quarter of said section twenty-six, which deed was duly filed in the county clerk's office

of Lancaster county, on May 7, 1872, and was duly re-
corded in deed record J; on page 574; and on the 24th day
of April, 1874, the said Spencer Chandler and Riola D.,
his wife, conveyed by warranty deed the said last above
described tract of land to this plaintiff, Edwin H. Coggs-
well, for the consideration, then paid, of six hundred dol-
lars, which said deed was filed for record in the clerk's
office of Lancaster county, Nebraska, April 30, 1874, and
was recorded in deed record O, on page 171; and that he,
the said Edwin H. Coggswell, is now the owner of said
land; that on the 14th day of January, 1880, the said
Hazelton S. Moore made a warranty deed, in which his
wife joined, to Oliver K. Griffith, whereby the said Moore
intended to convey to the said Griffith the west half of the
north-east quarter of said section twenty-six, and the said
Griffith well knew that such was the intention of the said
Moore; that the said land was in fact bought of said
Moore by one W. C. Griffith, who is the brother of said
Oliver K. Griffith; that the negotiations for the sale of the
land and the conveyance of the same by the said Moore to
the said Oliver K. Griffith were conducted solely on the
part of the Griffiths by the said W. C. Griffith, and this
plaintiff alleges the fact to be that the said William C.
Griffith was in fact the purchaser of the land from the said
Moore; that he in fact purchased the same for himself, but
that he procured the same to be conveyed to his brother,
Oliver K. Griffith, hoping thereby to be better enabled to
carry out his fraudulent purpose as hereinafter stated; that
the said Moore resides in the city of Rochester, in the state
of New York, and the negotiations for the sale of the land,
claimed to be owned by him, to the said Oliver K. Griffith,
were conducted by correspondence between the said Moore
and the said William C. Griffith; that after the said Moore
and William C. Griffith had agreed on the price for the
land, which was eight hundred dollars, he, the said Wil-
liam C. Griffith, procured a deed to be made in the city of
22

Lincoln, Nebraska, and forwarded to the said Moore at the city of Rochester, aforesaid, wherein he caused the land conveyed in the deed to be described in the same words used in the deed given by said Brown and wife to the said Moore, to-wit: 'The north-west quarter and the south-west quarter of the north-east quarter of section twenty-six, township eleven, range six east of the 6th P. M.,' which deed the said Moore and wife, supposing it contained a correct description of the property intended to be conveyed, executed and delivered to the said Griffith at the date aforesaid, which was filed for record in the county clerk's office of Lancaster county, and recorded in book 3 of deeds of said county; that the said William C. Griffith well knew at the time he negotiated for the purchase of said land and procured the deed to be made and forwarded as aforesaid, that the said Moore claimed to own only the west half of the north-east quarter of said section twenty-six, and that he did not claim to own any land in the north-west quarter of said section; that the said Moore while he owned the land had employed the said William C. Griffith to pay his taxes and to look after the land for him; and the said William C. Griffith well knew just what land he, the said Moore, claimed to own; that the said William C. Griffith procured the description to be written in the deed executed by the said Moore and wife to the said Oliver K. Griffith, for the purpose and with the intent of cheating and defrauding the owners of the north-west quarter of said section twenty-six out of their title thereto, and particularly of cheating and defrauding this plaintiff out of the north half of the north-west quarter of said section, hoping to have the description in the deed so construed as to cover and include all of the north-west quarter of section twenty-six, and the south-west quarter of the north-east quarter of said section twenty-six, instead of the north-west quarter of the north-east quarter and the south-west

quarter of the north-east quarter, as all the parties to said conveyances intended, as the said William C. Griffith well knew, whereby he hoped to obtain title to two hundred acres of land instead of eighty acres, the amount he in fact purchased; that the said William C. Griffith, knowing that his knowledge of the mistake in the description could be easily proved as his connection with the negotiation and sale of the land by Moore to his brother, Oliver K. Griffith, in order to embarrass this plaintiff and make more difficult for him to procure the necessary proof to establish the title of plaintiff, hoping thereby to be better enabled to carry out his nefarious scheme to swindle this plaintiff out of his land, by getting it into the hands of what might appear to be an innocent purchaser for value, procured the said Oliver K. Griffith and wife to convey by deed with covenants of warranty to one Dewitt N. Syford, all of the north-west quarter of said section twenty-six, and the said Dewitt N. Syford, as he alleges, is now in possession of said last described property, and claims to have been in possession thereof for about one year before the commencement of this suit, and claims to own the same; that the said Dewitt N. Syford is a near relative of the said William C. Griffith, is a man of no considerable means, and this plaintiff alleges that said Syford took title to said land with full knowledge of the plaintiff's rights in the premises, and that he took the title, and the said Oliver K. Griffith conveyed to the said Syford, with the view and for the purpose of assisting the said William C. Griffith in carrying out his scheme to defraud this plaintiff out of his land; that the said deed last above mentioned and referred to bears date August 17, 1883, and was filed for record in the office of the county clerk of Lancaster aforesaid, on the 5th day of September, 1883, and was recorded in deed record No. 16, at page 405; that the said Amanda O. Syford is the wife of the said Dewitt N. Syford, and claims a right of dower in the said lands; that the value

of the north half of the north-west quarter of said section twenty-six, at the commencement of this suit, and now, is three thousand dollars, and in the event that said Syford be by the court found to be in fact a purchaser of said lands for value and in good faith, and without notice of the title and equity of this plaintiff, then said William C. Griffith and Oliver K. Griffith, or one of them, should in equity account for and pay to this plaintiff, as well the proceeds of such sale by them, or one of them, made to said Syford, as also the actual value of said land, with interest thereon, as by them in equity received in trust for the use of this plaintiff, with interest, the said value of said land to be fixed at the highest value thereof up to the trial of this cause; that ever since he purchased said north half of the north-west quarter of section twenty-six, to-wit: since April 24, 1874, plaintiff has paid the taxes on said land and continued to pay the same until 1884, when he sent a man to pay the same and found they had been paid, and that about one year before the commencement of this suit he obtained the first knowledge that any person was claiming title to said land adversely to him." The plaintiff prays for various forms of relief, according as the court may find the facts to be.

Syford claims to be an innocent purchaser of the premises, and the Griffiths answer separately, pleading, in substance, their good faith. On the trial of the cause the court found in favor of the plaintiff, and rendered a decree in his favor.

The testimony tends to show that in August, 1868, one John Brown was the owner of the north half of section twenty-six, township eleven, range six east, in Lancaster county. Of this tract he sold the west half of the northeast quarter, being eighty acres, to one Hazelton S. Moore. The description in the deed, however, is, "the north-west quarter and the south-west quarter of the north-east quarter of section twenty-six" etc. This deed is dated Decem-

ber 8, 1868.   In June, 1869, said Brown sold the north half of the north-west quarter of said section to one Roger Mullin, and the plaintiff traces his title from Mullin. Hazelton S. Moore was a merchant, doing business in Rochester, New York, and the proof clearly shows that he claimed but eighty acres of land under his deed, viz.: The west half of the north-east quarter of said section twenty-six.   In January, 1880, Moore sold and conveyed the land he purchased of Brown to Oliver K. Griffith, the defendant, W. C. Griffith negotiating the sale.   At the request of Mr. Moore, W. C. Griffith had a deed prepared in Lincoln and forwarded it to Mr. Moore for the signature and acknowledgment of himself and wife, which, when duly signed and acknowledged, was returned to a bank in Lincoln, to be delivered to W. C. Griffith on the payment of the purchase price, and the deed was so delivered, and the money sent to Moore.   In August, 1883, W. C. Griffith, still acting as the agent of his brother, Oliver K., sold to the defendant, Dewitt N. Syford, the north-west quarter of said section twenty-six, for the sum of two thousand five hundred dollars, Syford paying nine hundred dollars down and giving a mortgage to secure the unpaid purchase price. Up to the time of the purchase of this land by Syford, it seems to have been uncultivated prairie land, no one having the actual possession.   In the deed from Hazelton S. Moore to O. K. Griffith the land is described in the same manner as in the deed from Brown to Moore, viz.: "the north-west quarter and the south-west quarter of the north-east quarter of section twenty-six." etc.   Mr. W. C. Griffith had paid the taxes for Hazelton S. Moore, while said Moore was the owner of the land, and well knew that Moore claimed but eighty acres, the receipt for taxes for the year 1878 being as follows:

Coggswell v. Griffith.

$13.68.

No. 774.

TREASURER'S OFFICE, LANCASTER COUNTY, NEBRASKA,

Lincoln, April 28, 1879,

Received of H. S. Moore by Griffith,

Thirteen and sixty-eight one-hundredths dollars, in full for the following Taxes for the year 1878.

| PART OF SECTION OR NAME OF TOWN. | Section or Lot | Township or Block | Range | Acres | STATE TAXES. | | | | | COUNTY TAXES | | | | | | | Interest | Advertising | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | General Fund | Sinking Fund | School Fund | University Fund | Insane Fund | General Fund | Poor Fund | Co. Road Fund | Sp'l. Bridge Fund | Sinking Fund | Dist. School Fund | Dog Fund | | | |
| N. W. N. E. | 26 | 11 | 6 | } | 1 28 | 32 | 32 | 12 | 12 | 2 24 | 48 | 48 | 64 | 5 76 | 37 | | | | 13 68 |
| S. W. N. E. | 26 | 11 | 6 | } | | | | | | | | | | | 1 92 | | | | |

LOUIS HELMER,
County Treasurer.
R. HELMER,
Deputy.

The testimony of W. C. Griffith establishes the fact that he well knew, before he effected the purchase of the land for his brother, that H. S. Moore did not own any portion of the north-west quarter of said section twenty-six. His own admissions, both on his direct and cross-examination while testifying in this case, show this to be true. We do not care to review his testimony at length, or to set out any portion of it here in this opinion, but it clearly establishes the fact of such knowledge. In addition to this, the testimony shows that the price paid for the land by O. K. Griffith did not exceed the value of the eighty acres in the west half of the north-east quarter of said section twenty-six. The proof, therefore, establishes the fact that O. K. Griffith took the north-west quarter of said section twenty-six with the knowledge, in his agent, that Moore had no equitable right to the same.

The case, therefore, is this: O. K. Griffith was not the equitable owner of the land described in the plaintiff's deed, to-wit: the north half of the north-west quarter of said section twenty-six, but by virtue of his apparent ownership and title, he conveyed said land to the defendant Syford, who, so far as appears, is a *bona fide* purchaser.

The rule is well established, that a court of equity will not permit one party to take advantage of and enjoy the benefit of a mistake which he knew of and did not correct. In general, whenever the legal title to property, real or personal, has been obtained through actual fraud or concealment, or under similar circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired, in favor of the one who is truly and equitably entitled to the same; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right.

2 Pomeroy's Equity, § 1053, and cases cited. The forms and varieties of these trusts are practically without limit, the principle being applied wherever it is necessary for the doing of complete justice, although the law may give a remedy in damages against the wrong-doer. *Hammond v. Pennock*, 61 N. Y., 145. *Bingham v. Bingham*, 1 Ves., Sr., 126. *Dewey v. Moyer*, 72 N. Y., 70–76. *Fulton v. Whitney*, 5 Hun, 16. *Baier v. Berberich*, 6 Mo. App., 537. *Mercier v. Hermme*, 50 Cal., 606. And where the property has been converted into money, the court will follow the trust fund so long as it can be traced. The defendants, W. C. and O. K. Griffith, therefore are chargeable with the value of the plaintiff's land conveyed by them to a *bona fide* purchaser, with lawful interest thereon. The amount due from the purchaser, so far as may be necessary to satisfy the plaintiff's claim for the north half of the north-west quarter of said section twenty-six, will be applied to the satisfaction of the same, if sufficient for that purpose. As the value of the land in question does not clearly appear at the date of the conveyance in August, 1883, the cause will be referred, to find the value of said north half of the north-west quarter of said section twenty-six, at the date of the conveyance to Syford, and report the same to this court within sixty days from this date.

Objection was made by the defendants on the trial, first, that the petition did not state facts sufficient to authorize the introduction of testimony; and second, that there was a misjoinder of parties defendant. Both of these objections were overruled, and such ruling is now assigned for error. The objections are untenable, as the petition does state a cause of action and there is no misjoinder of defendants. The judgment of the district court is reversed, and a decree will be entered in this court in conformity with this opinion.

JUDGMENT ACCORDINGLY.

REESE, CH. J., concurs.