Bowman v. Griffith.

JOHN W. BOWMAN, APPELLANT, V. OLIVER K. GRIFFITH ET AL., APPELLEES.

[FILED OCTOBER 5, 1892.]

1. **Deed:** PRESUMPTION OF DELIVERY AND ACCEPTANCE. When a deed, which is beneficial in its character to the grantee named therein, is properly acknowledged and recorded, the presumption of law is that it was delivered by the grantor and accepted by the grantee.

2. ———: RECORD: RECITALS. Where a deed, beneficial to the grantee, recites that it is executed for the purpose of correcting an error in a prior deed between the same parties, the record thereof is evidence of the facts therein recited.

3. **Bona Fide Purchaser of Real Estate.** Where a claim to real estate can be sustained only upon the ground that the person asserting it is a subsequent purchaser in good faith, such person is required to show affirmatively that he purchased without notice of the equities of another, and relying upon the apparent ownership of his grantor.

4. **On the evidence** in the record, *held,* that the defendant is not an innocent purchaser for value.

5. **Statements of Agent:** ESTOPPEL. Statements of an agent with authority to collect rents and care for the property of his principal will not be received in disparagement of the title of the latter so as to work an estoppel in favor of one who purchased from a stranger claiming adversely to such principal.

6. **Quitclaim Deed:** ACCEPTANCE BY GRANTEE. One who accepts a quitclaim deed from his grantor is bound, at his peril, to ascertain what equities, if any, exist against his title.

APPEAL from the district court for Lancaster county. Heard below before FIELD, J.

*G. M. Lambertson,* for appellant.

*Chas. O. Whedon, contra.*

POST, J.

This action was begun in the district court of Lancaster county by the plaintiff to quiet title, as against the defendants, to the northwest quarter of the northeast quarter of section 26, township 11 north, of range 6, in said county.

From the pleadings and proofs it appears that plaintiff claims title through the following conveyances: First—Patent from the United States to John Brown, August 1, 1868; filed for record July 1, 1871. Second—John Brown to Thomas Hyde, warranty deed, July 5, 1869; filed for record August 18, 1869. Third—Thomas Hyde to Reddington Stanhope, warranty deed, May 22, 1883; filed for record May 26, 1883. Fourth—Reddington Stanhope to F. M. Hall, quitclaim deed, July 21, 1883; filed for rec-

ord July 23, 1883.   Fifth—F. M. Hall to A. B. Smith, warranty deed, July 21, 1884; filed for record August 5, 1884.   Sixth—A. B. Smith to J. W. Bowman, plaintiff, warranty deed, September 21, 1885; filed for record September 23, 1885.

The defendant W. C. Griffith filed a disclaimer in the district court, but the other defendant, Oliver K. Griffith, disputes plaintiff's claim, and by way of cross-bill asks to have the title to the property in controversy quieted in him.   He claims title through the following conveyances: First—Patent, United States to John Brown, August 1, 1868; filed for record July 1, 1871.   Second—John Brown to Hazleton S. Moore, warranty deed, December 8, 1868; filed for record December 18, 1868.   Third—Hazleton S. Moore to Oliver K. Griffith, defendant, warranty deed, January 14, 1880; filed for record January 19, 1880.

The first question presented by the record is whether the deed from Brown to Moore, through which defendant claims, includes the property in controversy.   That deed, as appears from the above statement, was filed for record long before the execution of the deed from Brown to Hyde, hence it is apparent that if sufficient to pass the title to the grantee therein, Hyde could acquire no title by his deed. According to the description in the deed in question the property conveyed by Brown to Moore is " The northwest quarter and the southwest quarter of the northeast quarter of section 26," etc.   The description, we think, does not include the property in controversy.   The said deed on its face purports to convey two hundred acres, to-wit, all of the northwest quarter of the section aforesaid and the southwest quarter of the northeast quarter thereof.   It is evident therefore that the record of said deed was not notice of any equitable claim that Moore may have had to said property at the time of the conveyance by Brown to Hyde, hence if the latter was a *bona fide* purchaser within the true definition of the term, he acquired a good title thereto

as against Moore and the defendant who claims through him. In *Coggswell v. Griffith*, 23 Neb., 334, on the evidence in the record it was held that Brown had sold to Moore the west half of the northeast quarter of said section, including the land in controversy, and intended to convey the same to him, but by mutual mistake the description above quoted was inserted in the deed instead of the land intended to be conveyed thereby. That case was decided upon evidence not before us now, hence, although apparently relied upon by both plaintiff and defendant, cannot be said to be authority for either. The question is therefore, on the record of this case, What are the equities of Moore and his grantees in the subject of the controversy? This brings us to the consideration of an instrument not enumerated in either list of conveyances comprising the respective chains of title. The defendant having laid the necessary foundation therefor, introduced in evidence the record of a subsequent deed from Brown to Hyde, dated May 15, 1870, and filed for record the same day. Said deed is in the usual form and the property conveyed is the southwest quarter of the northwest quarter of section 26, etc., and appears to have been made for the purpose of correcting an error in the prior deed between the same parties, dated July 5, 1869, under which the plaintiff claims. Among others it contains the following recital:

"This deed is made to correct a mistake made by the above named grantors to the above named grantee, dated the 5th day of July, A. D. 1869, whereby the above named grantors conveyed to said grantees the northwest quarter of the northeast quarter of section 26 aforesaid, together with other portions of said section in said deed described, whereas the lands intended to be conveyed thereby were, and are, the east half of the northeast quarter of section 26 aforesaid, and the south half of the northwest quarter of section aforesaid, the northwest quarter of the northeast quarter of said section 26 in said deed de-

scribed having been previously conveyed to H. S. Moore by deed, dated the 8th day of December, 1868."

It is argued by defendant that the above record does not prove the error alleged in the first deed, inasmuch as Hyde did not reconvey the property in controversy to Brown but subsequently deeded it to Stanhope. Aside from the recital in the record set out above, there is in this case no evidence of any title, legal or equitable, in defendant or his grantor, Moore. His rights therefore depend upon the inference which is to be drawn from the recording of the second deed. If that instrument was delivered and accepted by the parties, and for the purpose expressed therein, that fact, it must be conceded, is evidence from which we should find that Moore was the equitable owner of the property in dispute, and that he should recover unless plaintiff's equities are superior by reason of having purchased without notice of the rights of the former, which will be considered hereafter. The general rule is that the registration of a deed is *prima facie* evidence of its delivery. (Devlin on Deeds, 292.)

It is said by Judge Dillon in *Robinson v. Gould,* 26 Ia., 89, that "when a deed beneficial in its character to the grantee has been properly acknowledged and recorded, the presumption of law in favor of the grantee is that it has been delivered, and the burden of proof is upon the party claiming the nondelivery to clearly overcome that presumption." That the deed under consideration was beneficial to Hyde will not be questioned, since by it Brown conveys to him forty acres of land, the southeast quarter of the northeast quarter of the section aforesaid not included in the prior deed. The presumption is that he Hyde, took and holds title to the property last described under that conveyance. On the other hand, the deed was certainly not beneficial to Brown, who thereby conveyed the property last described. We think, therefore, that the acceptance of said deed by Hyde, the only beneficiary thereof,

should be presumed from the fact that it was subsequently filed for record, and that the record aforesaid was rightly admitted in evidence. That instrument fully proves the facts as alleged by defendant, viz., the mistake in the prior deed to Hyde and that Moore was, at the time of the execution thereof, the equitable owner of the property in controversy. Nor is the presumption aforesaid overcome by the fact that Hyde subsequently asserted title to said land by deeding it to Stanhope. He was required to accept or reject the said deed as an entirety. By taking title through it he must be held to have assented to the conditions upon which the property named therein was conveyed. In other words, as between Brown and Hyde, it is an admission by the latter that the land in dispute was in equity the property of the former and his grantees.

We come now to the question, is plaintiff a *bona fide* purchaser? His contention is that he purchased the property without notice of any claim of the defendant thereto and that his equities are therefore superior and should prevail against those of the latter. A *bona fide* purchaser is one who purchases for value without notice of the equities of third parties. (*Snowden v. Tyler*, 21 Neb., 199.) The question of the equities of the respective parties is distinctly presented by the pleadings. And the plaintiff while a witness in his own behalf testifies as follows:

Q. You say you made no inquiry about the title before you bought it?

A. No, sir; none whatever.

It does not appear from his testimony that he relied upon the title of Smith, his grantor, or that he paid the consideration named without notice of the rights of the defendant. Nor does it appear that he was ever advised in whom the record title rested. This showing falls far short of establishing his claim to the rights of a subsequent purchaser in good faith. The burden was upon him and he was bound to prove both payment in ignorance of defend-

aut's equities and that he relied upon the title of his grantor. (*Shotwell v. Harrison,* 22 Mich., 410; *Sillyman v. King,* 36 Ia., 207; *Denning v. Smith,* 3 Johns. Ch. [N. Y.], 332; *Seymour v. McKinstry,* 106 N. Y., 230.) In the last case cited it is held on the authority of *Denning v. Smith, supra,* that where a claim can be sustained only upon the ground that the person asserting it is an innocent purchaser he must positively deny the equitable rights of another, although not charged. It is claimed that defendant is estopped to now claim the land in controversy, because W. C. Griffith, his agent, stated to Mr. Hall, through whom plaintiff claims, that he, defendant, made no claim to said property. There are at least two sufficient reasons why the statement aforesaid will not work an estoppel as against the defendant O. K. Griffith: First—It is not shown that W. C. Griffith had any such authority as would bind his principal, O. K. Griffith, by a statement in disparagement of his title, Second—Hall, who was then negotiating for the property, accepted a quitclaim deed from Stanhope, his grantor. (*Snowden v. Tyler, supra.*)

Finally, it is claimed that defendant is estopped to claim this forty acres for the reason that in the case of *Coggswell v. Griffith, supra,* his contention was that he had purchased two hundred acres from Moore. A sufficient answer to this claim is that the property now in controversy was not involved in that suit. Neither are the parties identical, hence defendant would not be concluded by any decree in that case, had the court therein assumed to determine the rights of the parties with respect to the property in controversy, which it is clear was not attempted. At most it can only be said that he, in that case, insisted upon a construction of his deed inconsistent with the one he now contends for. Whatever view we may feel constrained to take of his conduct in that case as a question of morals, it is apparent that plaintiff has not been misled thereby to his detriment, and that in legal contemplation he is not now

estopped to demand the property which in equity he is en-
titled to recover.    The judgment of the district court is

AFFIRMED.

THE other judges concur.