No. 54.—ALFRED AUSTELL, Admr. &c. plaintiff in error, *vs.* PARKER M. RICE, *et al.* defendants.

[1.] We, or either of us, promise, by the 25th December, 1841, to pay W. W. Austell, lawful attorney for Frances Bomer, widow of E. Bomer, deceased, one thousand dollars, in full of her and her infant child's interest in the estate of A. Bomer, deceased, for value received.      PARKER M. RICE, *et al.* 7th July, 1840.

The above note held to be payable to W. W. Austell, and that the words, "lawful attorney for Frances Bomer, widow of E. Bomer, deceased," are descriptive of the person, and that he in life, and his administrator after his death, may maintain an action on it. An infant, by its *prochein ami*, may sue upon a note made payable to itself.

[2.] Slight consideration is sufficient to sustain a contract, and Courts of Law will not look closely into its adequacy.

[3.] Forbearance to prosecute a legal claim, and the compromise of a doubtful right, are both sufficient considerations to support a contract.

[4.] Fraud in the promisee, without injury to the promisor, is not sufficient to invalidate a contract.

[5.] The motive with which a party enters into a contract, is no part of the consideration. The consideration must be of some value in the eye of the law, and must move from the plaintiff to the defendant. Hence a disappointment of the motive, by the fraudulent misrepresentations of the plaintiff, is not a fraud upon the contract, and is not available as a defence.

Assumpsit—Walker Superior Court, tried before Judge WRIGHT, March Term, 1848.

The facts are set out in the opinion of the Court.

Austell *vs.* Rice, *et al.*

TRIPPE and W. H. UNDERWOOD, for plaintiff in error.

AKIN, represented by HOOPER and PEEPLES, for defendant.

Judge WARNER, having formerly been counsel in this cause, did not preside.

*By the Court.*—NISBET, J. delivering the opinion.

Armstead Bomer, sen. died, leaving a will in which the principal part of his estate was left to his wife during life or widowhood, and at her death, to be divided among his children, according to the manner which he prescribed in the will.   One of his sons had died previous to the testator's death, leaving a widow, Frances Bomer, and an infant child.   To this widow he left a legacy of fifty dollars, and to that child a legacy of three hundred dollars.   The executor proceeded to have the will proven, and W. W. Austell appeared, representing Frances Bomer and her child, under a power of attorney from Frances Bomer, and entered a *caveat.*   In consequence of this caveat, it was agreed among the legatees, (the defendants,) and W. W. Austell, attorney in fact for Mrs. Bomer, that they would unite and resist the probate of the will, and divide the property among themselves, allowing to Mrs. F. Bomer, one thousand dollars, and to her child, one thousand dollars ; the widow of the testator, who was tenant for life under the will, coming into the management.   It was also understood that Mrs. F. Bomer, for herself and child, would relinquish their legacies under the will.   This understanding was consummated.   The legatees taking possession of the estate, divided it among themselves, each getting about $2700, and executed and delivered to W. W. Austell, two notes, of which the following are copies :

"We, or either of us promise, by 25th December, 1841, to pay W. W. Austell, lawful attorney for Frances Bomer, widow of E. Bomer, deceased, one thousand dollars, in full of her interest in the estate of A. Bomer, deceased, drawing interest from 25th December next, for value received.

PARKER M. RICE,
A. BOMER,
JNO. BOMER,
ELIZABETH BOMER,
ROBT. MCMILLAN,
THOS. S. RICE.

7th July, 1840."

Austell *vs.* Rice, *et al.*

"We, or either of us promise, by the 25th of December, 1841, to pay W. W. Austell, lawful attorney for Frances Bomer, widow of E. Bomer, deceased, one thousand dollars, in full of her and her infant child's interest in the estate of A. Bomer, deceased, for value received.

PARKER M. RICE,
A. BOMER,
J. BOMER,
S. BOMER,
ELIZABETH BOMER,
ROBT. MCMILLAN,
THOS. S. RICE.

7th July, 1840."

One of these notes, it was understood, was given for Mrs. F. Bomer's interest in the estate, and the other for her child's interest. The parties united for a while, to resist the probate of the will. The legatees, however, as they assert, learning that Austell had deceived them in this, that when the arrangement was entered into, he represented himself as having no interest in the matter, but merely acting as the agent of Mrs. Bomer and her child, whereas, he was in fact, by contract with Mrs. Bomer, the owner of all her interest in the estate, changed their position, and co-operated with the executor to have the will proven, with an understanding with him that the administration should go no farther than the probate. The will was proven. I should have stated that a part of the understanding between Austell and the legatees, was, that Mrs. F. Bomer and her child, in the event of the will being set aside, should not come in for any distributive share, other than the two thousand dollars agreed to be paid them.

These things being done, W. W. Austel. died, and his administrator instituted suit upon the notes against all the defendants. to which action they pleaded *that the notes were without consideration and void,* and that *they were procured by fraudulent devices and representations, and therefore void.* The latter plea set forth that the fraud consisted in Austell's representing himself as the agent for Mrs. Bomer and her child, and that the notes were for her use and that of her child, and that he had no interest in them, whereas, in fact, he was, by contract with Mrs. Bomer, the owner of one half the amount which defendants had agreed to pay. Up-

on the hearing, the presiding Judge instructed the jury, that so far as concerns the note given for the child's interest in the estate, the plaintiff had no right to sue upon it, and that the person legally entitled to sue, was the child by its *next friend*—that so far as the note given for Mrs. Bomer's interest is concerned, *that* was without consideration.   And that the notes were, if the jury believed the witnesses, proven to have been obtained by gross and palpable fraud.   To these instructions the plaintiff excepted.

[1.] The first question for our consideration is this : Was the administrator of W. W. Austell entitled to sue on the second note before transcribed ?   The rule is, that he who has the legal title to a note, is the person who can maintain an action on it. If, on the face of this paper, the legal title was, by the parties to it, cast upon W. W. Austell, he, when in life, could have maintained an action, and upon his death, the title devolved upon his legal representative, who, in this case, is the administrator.   We are in a Court of Law, and must determine this case upon legal principles.   Were this note payable to the infant, he might sue on it by his *prochein ami*.   A contract executed may be enforced by an infant, although not against him, as a general rule.   A note payable to an infant may be collected by him, through the agency of a *next friend*.   *Chitty on Bills*, 20.   *Warwick vs. Bruce,* 2 *Maul. & Selw.*205.   *Teed vs. Ellworth,* 14 *East,* 210.   6 *Taunt.* 118, *S. C. in error.*   *Holliday vs. Atkinson,* 5 *B. & C.*501.   *Kyd,* 30.   *Bac. Ab. Infants,* 1, 6.   This note is not payable to an infant, nor is it made payable in terms to any one for his use.   It is made payable to W. W. Austell, lawful attorney for Frances Bomer, widow of E. Bomer, deceased.   The consideration of the note is expressed to be the interest of Frances Bomer and her infant child, in the estate of A. Bomer, deceased.   There was no plea filed in abatement.   The question as to the right of the present plaintiff to sue, is made upon the face of the pleadings.   Upon the note and the pleadings, therefore, we see no legal title in the infant.   The note would not support an action in favor of any one not a party to it.   Besides, the legal title to this note, is, by contract, evidenced by the note, in another.   It is in the payee.   The Court below was therefore in error, when it ruled that the action ought to have been brought by the infant child of Mrs. F. Bomer, by its next friend.   This may be true, however, and yet the action be properly brought by the administrator of

W. W. Austell. We think that he is the payee of the note, and the legal right to recover was in him. Here is a written promise to pay *him ;* the words "lawful attorney for Frances Bomer, widow of E. Bomer, deceased," are descriptive of the person, and may be rejected. The contract is with *him ;* the undertaking is to pay *him.* If we view this case in the light of the facts developed upon the trial, then the action is brought properly, for by the proof, Austell was the agent of Mrs. Bomer, to procure a settlement of her and her child's interest in the estate of A. Bomer, deceased, with an interest in the fund to be realized—he, by contract with Mrs. F. Bomer, was to receive a part of what he might be able to realize. He is not the agent of her child; there was no evidence of that. In the nature of the case, he could not be, for that child was legally and in fact an infant. If an agent has a special property or interest in the subject matter of the contract, he may sue on it. *Chitty on Contracts,* 230, *and authorities there cited in notes.*

The note may be held as evidence of a trust—an implied trust. It shows that the money, in equity, belongs to the infant child of Mrs. Bomer, and that Austell is the trustee. Let that be so, and still here, in a Court of Law, we are to look alone to the inquiry, where rests the legal title ? If the note proves a trust, still the legal estate is in the trustee, and he is entitled to sue at law. But reverting to our first position, we think that the contract is with Austell; he is the payee ; the title to the note was in him, and passed at his death to his administrator. *Chitty on Bills,* 534, 535. *Smith vs. Kendal,* 1 *Esp. R.* 231. 6 *T. R.* 123. 1 *M. & Selw.* 723. 4 *Mass.* 258. *Buffum vs. Chadwick,* 8 *Mass.* 103. 1 *Paine C. C. R.* 252. 3 *Wash. C. C. R.* 560.

[2.] The next error assigned, is upon the opinion of the presiding Judge, that the note to Austell, given on account of Mrs. Bomer, is void for want of consideration. A Court of Law will not look closely to the adequacy or inadequacy of a consideration. There must be some consideration—the amount of it is left with the parties. It is not the province of Courts to make contracts, to see to it, that none are enforced but such as are strictly equitable, but to enforce them when lawfully made. *Slight* consideration will sustain a contract. The best rule, for clearness and simplicity, upon this subject, which I have seen, is laid down by Mr. Smith in the following words : "Any benefit

Austell *vs.* Rice, *et al.*

accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon him to whom it is made, is sufficient consideration in the eye of the law to sustain an assumpsit." *Smith on Contracts*, 87.

[3.] Let us test this contract by this rule, and I think it will be seen that there is consideration, quite sufficient, to sustain it.

Mrs. Bomer, by her agent, had caveated the will of A. Bomer, deceased, the object of which was to set it aside, that she and her child might come in and share equally with these *promisors*, in his estate. Let it be conceded, that *she* could not come in by law—yet her child could, being the representative of a son of testator, deceased. Pending the caveat, it is agreed, that she will relinquish her legacy of fifty dollars in the will—that the parties are to unite in preventing the execution of the will—that the promisors are to take the property into possession, and distribute it among themselves; *and in consideration of her legacy relinquished, and of the right to distribute the property among themselves, undisturbed by the child, who was (the will being set aside) as much entitled as themselves; they make these two promissory notes, amounting to two thousand dollars.*

Now what is the benefit accruing to them? First, they get the small legacy of fifty dollars, left to Mrs. Bomer. Second, they compromise the claim which Mrs. Bomer set up in behalf of her infant child, upon the estate of its grand-father. And what was this compromise worth to them? It was worth the difference between what they agreed to pay, in satisfaction of the child's interest in the estate, when equally distributed, and what that interest actually would be. They agreed to pay $1000; and the distributive share which, by the arrangement, they each realized and now hold, was proven to be about $2700. Include what they agreed to pay Mrs. Bomer, which was $1000 also, and still they make by the arrangement, about $700. Excluding *that* and looking to the arrangement in reference to the child's interest in the estate alone, and the arrangement benefited them something like $1700. Proving the transaction, as they did on the trial, as I have represented it, and still in possession of all the property, I must say that it required some hardihood to enable these defendants to claim that either of these notes was without consideration. We are not here to do equity between all these parties; as the matter stands before us, we believe that there was ample consideration

for the note. The relinquishment to them of Mrs. Bomer's lega-
cy, is a small but valuable consideration. And the compromise
of the caveat was also a sufficient consideration. Whether that
caveat would or not have been successful, is not for us to deter-
mine. Mrs. Bomer had the right, in behalf of her child, to resist
the will, and to move to set it aside. And if set aside, the child
would be a distributee. The compromise of a suit, although the
legal right to recover be doubtful, is a consideration which will
support a contract. It does not vary the matter, that the child
would not be bound by the compromise. It is not with them, in
a Court of Law, to plead that. They have not plead it.

Were they in a Court of Equity, offering to do equity,
the matter would be different. We must look at the rights of
these defendants, in the light of their own contract, and of their
actings and doings under it. The agreement to set aside the
will, or rather to consider it as set aside, lies at the foundation of
the transaction. That done, the child was a distributee. It had
a legal right by their concession. That right was the basis of
the settlement. And the compromise of that right is a valuable
consideration. And aside from this view of it, Mrs. Bomer, in
behalf of her child, only a year or two old, was in the act of pros-
ecuting a suit to set aside a will, which, if successful, would let
her child into a distributive share of the testator's estate, and for
one thousand dollars she consents to abandon it, and permit these
defendants to take and enjoy it. That compromise or abandon-
ment, would seem to me to be a sufficient consideration. That
a slight consideration is sufficient to support a contract, and a
Court of Law will not enquire into the adequacy of it; See *Smith
on Contracts*, 88, 89, 90. *Williamson vs. Clement*, 1 *Taunt.* 523.
*Willets vs. Kenedy*, 8 *Bing.* 8. *Burr vs. Guy*, 4 *East*, 194.
*Bainbridge vs. Firmston*, 1 *Perr. & Dav.* 2. *Wilkinson vs. Olive-
ria*, 1 *Bing. N. C.* 490. 10 *Ad. & El.* 309. 2 *Ld. Raymond*,
1164. 8 *Ad. & El.* 846. 6 *Ad. & El.* 439. 5 *M. & W.* 551.
*Chitty on Contracts*, 30, 31, 32. 2 *Har. & Gill.* 114. 2 *Bay*, 380.
5 *Ham.* 471. 1 *Met.* 93. 2 *Hill*, 606. 1 *Ball & Beatty*, 34.

As to forbearance to prosecute a legal claim, and the compro-
mise of doubtful rights, being a sufficient consideration—see *Chitty
on Contracts*, 35, *notes* 43, 44. 6 *Munf.* 406. 1 *Bibb*, 168. 2 *Ib.*
448. 4 *Hawk.* 178. 17 *Pick.* 476. 1 *Bro. C. C.* 22, 26, *note a.*
6 *Watts*, 421. 14 *Conn.* 12. 1 *Watts & Seg.* 467. 4 *Metc.* 270,

6 *Monro*, 97. 2 *Rand.* 442. 5 *Watts*, 259. 1 *Watts*, 216, 217. 2 *N. Hamp.* 97. 1 *Wright*, 660. 4 *Pick.* 97. 14 *Johns.* 466. 2 *Wend.* 184. 7 *Ad. & El.* 19. 8 *Bing.* 5. *Lawrence vs. Beaubien*, 2 *Bailey. S. C.* 623.

The Court farther charged the jury, that if they believed the witnesses, the obtainment of the notes was founded in gross and palpable fraud. This manner of instructing the jury is within the rule this Court has several times laid down. The Judge leaves the veracity of the witnesses to be judged of by the jury, and expresses his own opinion upon the testimony. He says to them, that if they find the witnesses credible, then gross and palpable fraud is proven. The fact of fraud or not, is for the jury to de termine. The Judge has the right to express his opinion upon the evidence. It is impossible, however, not to see that his manner of doing it is well calculated to cause them to understand it as a direction to them, and in that respect, the charge is by no means to be approved.

[4.] The defendant's plea is, that the notes are void because fraudulently obtained, and it charges the fraud to consist in this, that the agent, Austell, represented that the notes were for Mrs. Bomer and child, and that he had none or a very 'little interest in them, when in fact he was, as subsequently appeared, interested as owner of one half the amount which they agreed to pay. They farther say, that their motive or intention was to make provision for Mrs. Bomer and her child, and by Austell's fraudulent misrepresentations they have been defeated in that intention. Admitting the plea to be sustained by the proof, then, in our judgment, according to law, it is not such a case of fraud as will invalidate the notes. That the false statements of Austell were morally wrong, is very clear. They constitute a flaud, but it is a fraud without injury. *"Damnum absque injuria."* Fraud without injury, or injury without fraud, will not sustain an action, or a defence. Both must exist. *Administrators of Green vs. Bryant*, 2 *Kelly*, 66. 2 *Kent's Comm.* 489. 3 *Buls. R.* 95. Whether the agent, Austell, misrepresented his interest in the transaction or not; whether the plea be true or false, the defendants will have neither more nor less to pay on their contract. If it be true, it does not increase their liability; they are not injured by it, and have no right to complain.

Again, to make the fraud available to them, it must refer to

and affect the *consideration* which moved them to execute the notes—it must reach and lessen the benefits which they derived from the contract.

[5.] The consideration, the benefit accruing to them, is the *cause* of the contract—the *motive* with which they entered into it, is no part of the consideration. And if that motive, therefore, be defeated by the fraudulent misrepresentations of the other party, the law cannot regard it. This distinction between motive and consideration, has been recently recognised in England. These defendants say, that their motive was to benefit Mrs. Bomer and her child, and in this they have been disappointed, by the fraudulent conduct of Austell. Let all this be true, and it is all one side of the contract. The law cannot regard, in just such a case as this is, either the motive or the fraud which defeats it. It must still look to the contract; that is to be sustained or not by legal rules. Suppose, for example, there were no consideration for these notes, but the benevolent motive to benefit Mrs. Bomer and her child—no benefit of any kind to the defendants, and no loss, or trouble or disadvantage to, or charge upon the promisee; they would be without consideration—nude pacts. If this be true, how can that be a fraud upon them, which affects only that benevolent motive? The Civil Law gives the following definition : *Nudum pactum est ubi nulla subest causa præter conventionem, sed ubi subest causa fit obligatio et parit actionem."*

The French Civil Code adopts the definition of the Civil Law, and French commentators have taken the distinction I refer to. According to their construction, *causa*, does not mean *motive*. The benefit to the promisor is the moving cause of the contract. And it must be a benefit which the *law* recognises—not a mere gratification of a benevolent or kind disposition. This view of it, as I before said, is taken recently in the English Courts, and the distinction between motive and consideration recognised. It is, indeed, well understood that the consideration must be of *some value*, and it must move from the promissee to the promisor, and that, whether it consist in a specific advantage to the latter, or a loss, trouble or charge to the former. *Price vs. Easton,* 4 B. & Ad. 433. *Edwards vs. Baugh,* 11 M. & W. 641. *Clutterbreck vs. Coffin,* 4 Scott N. R. 509. *Crow vs. Rogers,* 1 Stra. 592. *Lilly vs. Hays,* 5 A. & E. 548. *Galloway vs. Jackson,* 3 Scott N. R. 753, 763. *Thornton vs. Jenyins,* 1 Scott N. R. 52.

*Jackson vs. Cobbin,* 8 *M. & W.* 790.   *Cowper vs. Green,* 7 *M. & W.* 633.

The distinction is fully illustrated in the late case of *Thomas vs. Thomas,* 2 *Q. B.* 859. 42 *E. C. L. Reports.* In that case there was an agreement between the plaintiff, who was a widow, and the defendant and one S. T..who were the executors of her husband, by which, after reciting that the husband of the plaintiff, in his life, had verbally expressed his desire that the plaintiff should have a certain house, &c. during her life, and reciting also, that the defendants were desirous of carrying his wishes into effect, it was witnessed that in consideration of *such desire,* and of the premises, the executors would convey the house, &c. to the plaintiff for life, " provided nevertheless, and it is hereby agreed and declared," that the plaintiff should pay one pound yearly for ground rent, and should keep the said house in repair. In this case it was held, that respect for the wishes of plaintiff's husband was no part of the consideration of this contract, and need not be stated in the declaration. Lord Denman, in this case, interprets the word *cause* in the definition of a *nude pact,* as " one which confers what *the law* considers a benefit on the party." In this case, Patterson, J. remarks, "Motive is not the same thing with consideration. Consideration means something that is of some value in the eye of the law, moving from the plaintiff. It may be some benefit to the plaintiff or some detriment to the defendant, but at all events it must be moving from the plaintiff." See also *Smith on Contracts, note,* 53. *Broom's Legal Maxims,* 342, 343.

As the respect which the defendants had to the wishes of the deceased husband—the *motive* with which they entered into the contract—was held to be no part of the consideration in the case of *Thomas vs. Thomas,* so in this case, the motive, to-wit : a desire to provide something for Mrs. Bomer and her child, is no part of the consideration. It does not enter into the contract at all. The contract is to be viewed as it would be, had there been no such motive. The conclusion is therefore irresistible, that if there was a fraud upon that motive, it is not a fraud upon the contract, and cannot be set up in avoidance of it.

What are the rights of the child, in equity, growing out of this entire transaction ; whether this note, or its proceeds may not be seized in the hands of the administrator of Austell, and applied

to its use; whether it is not entitled in addition to its legacy of $300, or whether, under the circumstances, these defendants may not be compelled to pay its full distributive share of the estate of A. Bomer, deceased, we express no opinion.  I will say, however, that it behooves its friends to look to its interests, for they are valuable, and its rights unquestionable.

Let the judgment be reversed.