308 Ga. 475
FINAL COPY

S20A0268.  HALL v. THE STATE.

BETHEL, Justice.

Deante Hall was found guilty of malice murder, felony murder, aggravated assault, criminal attempt to commit malice murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon, in connection with the shooting death of Tony Butler and an assault on Levar Andrews.[1]

---

[1] The crimes occurred on July 6, 2016. On October 7, 2016, Hall was indicted by a Newton County grand jury for: malice murder (Count 1); felony murder predicated on the aggravated assault on Butler (Count 2); aggravated assault of Butler (Count 3); criminal attempt to commit malice murder (Count 4); aggravated assault with a firearm on Andrews by pointing the weapon at him (Count 5); aggravated assault with a handgun on Andrews by striking him with the weapon (Count 6); two counts of possession of a firearm during the commission of a felony (Counts 7 and 8);  and possession of a firearm by a convicted felon (Count 9). At a jury trial from May 7 to 10, 2018, a jury found Hall guilty of all counts. The trial court sentenced Hall to life without parole for malice murder (Count 1), 30 years concurrent for criminal attempt to commit malice murder (Count 4), 20 years concurrent for aggravated assault (Count 6), five years consecutive for each count of possession of a firearm during the commission of a felony (Counts 7 and 8), and five years concurrent for possession of a firearm by a convicted felon (Count 9), for a total sentence of life plus 10 years. The felony murder count (Count 2) was vacated by operation of law, aggravated assault with regard to Butler (Count 3) was merged into malice murder (Count 1), and aggravated assault with a firearm

Hall challenges the sufficiency of the evidence as to each offense of which he was convicted. We conclude that the evidence was sufficient to sustain the jury's verdicts.

The trial evidence viewed in the light most favorable to the verdicts showed the following. In the weeks leading up to Butler's death in July 2016, Hall had become convinced that his wife, with whom he was "on the brink of separation" and with whom he had a volatile relationship, was having an affair with Hall's close friend, Levar Andrews. Hall's wife denied having extramarital relations of any kind. On July 6, 2016, Hall stopped by his wife's home and again accused her of being unfaithful with Andrews. Hall's wife recalled that Hall was "acting strange," appeared "disheveled," and told her to "prepare [herself] to get black dresses for funerals." Later that day, Andrews picked up Hall to hang out. Andrews, who was driving

with regard to Andrews (Count 5) was merged into criminal attempt to commit malice murder (Count 4) for sentencing purposes. On May 25, 2018, Hall filed a motion for new trial, and amended it on March 12, 2019. The trial court denied the motion for new trial as amended on June 4, 2019. Hall filed a notice of appeal on July 1, 2019. The case was docketed to this Court's term beginning in December 2019 and was submitted for a decision on the briefs.

a black truck, was accompanied by his brother, Tony Butler, who was sitting in the front passenger seat, and another friend, Jeffery Domino, who was sitting in the back seat behind Andrews. Hall sat in the back seat behind Butler. The group drove around for a couple of hours, stopping at a few stores and smoking marijuana. Hall, who was acting unusual and "spacey," told the group that he had been up for the past three days "popping pills" and "snorting cocaine," and that he had been "seeing blood."

During the drive, Hall had been concealing a black 9 mm Hi-Point handgun in a green bag. Just as Andrews was about to drop Hall off, Hall fired the gun through the bag into the back of Butler's seat, hitting Butler. Startled by the sound of the gunshot, Andrews steered the truck onto the curb. Domino, whose ears were "ringing" from the sound of the first shot, immediately jumped out of the truck and ran across the street. He then quickly determined that Butler had been shot, looked to the back seat of the truck, and saw Hall pointing the gun at Andrews' head and repeatedly pulling the trigger on the gun, which was now misfiring. When Hall's efforts to

shoot Andrews failed, Hall struck Andrews in the head with the gun. As a result of the attack by Hall, Andrews sustained injuries to his face, including a broken nose, as well as broken ribs. Hall and Andrews got out of the truck, and Hall continued to attack Andrews, repeatedly shouting "Y'all f***ing my wife." Hall also stated, "I see red." Hall then jumped into a nearby car that had been following Andrews' car and fled the scene. Andrews turned his attention back to Butler, who was bleeding heavily from the gunshot wound to his chest. Andrews then called for Domino to return to the truck, help him apply pressure to the wound, and find the nearest hospital. Andrews drove Domino and Butler toward a hospital, but after hitting heavy traffic, Andrews stopped the truck in the middle of the road and began to perform CPR on Butler. An off-duty nurse attempted to provide aid, and an ambulance arrived shortly thereafter and transported Butler to the hospital, where he later died as a result of the gunshot wound to his chest.

Meanwhile, Hall was seen fleeing on foot in a neighborhood approximately a quarter-mile from where the shooting took place.

Hall approached a neighbor, demanded a ride, and, after the neighbor turned him down, ran into a nearby wooded area. The neighbor called the police, who arrived on the scene and secured the area. Later that night Hall spoke with his sister and told her about the trouble he was having with his wife and that he had "got into it with some dudes."

At the scene of the shooting, police investigators found a 9 mm bullet casing in the back of Andrews' truck, as well as live rounds in the truck and in the roadway. Police also located a green bag with a frayed hole, as well as green fibers on the back of Butler's seat, which indicated that the gun had been fired through the bag. At trial, a ballistics expert testified that shooting through a bag can cause a firearm to malfunction, which would also result in the gun ejecting live rounds, rather than casings. The expert also testified that the bullet's trajectory was consistent with a left-handed shooter sitting directly behind Butler.

About three weeks after the shooting, the police located and

arrested Hall. That evening, after being given *Miranda* warnings,[2] Hall was interviewed by police. In that interview, he claimed he was being framed for Butler's murder. Hall told investigators that Butler was shot by two unknown "country boys" who had pulled up near the truck and suddenly started shooting. In the same interview, Hall admitted to being left-handed and to sitting in the back seat behind Butler on the day of the shooting.

Following the interview and while awaiting trial, Hall spoke with Domino, who had been arrested for unrelated charges. Hall told Domino that he wanted to kill Andrews, whom he suspected of sleeping with his wife, but that the gun had jammed. Hall further explained to Domino that he was going to "make it seem like these city n****** came to finesse a country n*****," which Domino testified he understood to mean that Hall planned to "play the victim."

Hall argues that the evidence was insufficient to support the

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 684) (1966).

jury's verdicts.[3] When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). The jury's resolution of these issues "adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017).

Hall argues that the evidence was insufficient because (1) the primary evidence against Hall was the inconsistent testimony of

---

[3] Hall challenges the sufficiency of the evidence for felony murder (Count 2), aggravated assault with regard to Butler (Count 3), and aggravated assault with a firearm with regard to Andrews (Count 5). However, Hall was not sentenced on any of these counts, see footnote 1 above, and accordingly, these claims are moot. See, e.g., *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010).

Andrews and Domino, neither of whom could provide a motive for Hall having shot Butler,[4] and (2) any additional evidence was circumstantial as the State did not present any physical evidence linking Hall to the shooting.

First, although Hall argues that the eyewitness testimony was inconsistent in certain respects, this Court "does not reweigh evidence or resolve conflicts in testimony[.]" (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736, 736 (1) (832 SE2d 354) (2019). "[I]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citation and punctuation omitted.) *Worthen v. State*, 306 Ga. 600, 603 (1) (b) (832 SE2d 335) (2019). See also *Stanford v. State*, 305 Ga. 388, 390-391 (825 SE2d 196) (2019) ("So long as there is some competent evidence, even if contradicted, to support each fact

---

[4] Although Hall argues that the State was unable to provide a motive for Hall to have shot Butler, the State was not required to provide a motive. See *Romer v. State*, 293 Ga. 339, 341 (1) (b) (745 SE2d 637) (2013) ("[W]hile evidence of motive for the homicide is always *relevant* in a murder trial, the State is not *required* to prove the defendant's motive for killing the victim to sustain a murder conviction, since motive is not an essential element of the crime." (citations omitted; emphasis in original)).

necessary to the State's case beyond a reasonable doubt, the jury's verdict will be upheld.").

Here, there was evidence that, on the day of the shooting, Hall accused his wife of having an affair with Andrews and told her to "prepare for funerals." Andrews and Domino both testified to hearing a gunshot, realizing that Butler had been shot, and immediately turning to see Hall holding a gun to Andrews' head. After the gun misfired repeatedly, Hall struck Andrews in the head with the gun and shouted "Y'all f***ing my wife," indicating that he believed multiple individuals were having an affair with his wife. Hall also told Domino that he wanted to kill Andrews in retaliation for Andrews' suspected affair with Hall's wife, and that Hall planned to blame two unknown individuals for the shooting. Finally, Hall told police that he was present during the shooting, and that he was left-handed and seated directly behind Butler in the truck, both of which were consistent with the trajectory of the bullet that hit Butler. Although the State was not required to prove motive, here the evidence was sufficient for the jury to find that Hall had a motive

to commit the crimes and that he did so.

Second, although Hall argues that there was no physical evidence linking him to the shooting, "it is of no consequence that the State did not adduce physical evidence — such as DNA evidence or fingerprints — connecting [Hall] to the crime." *Gittens v. State*, 307 Ga. __, __ (1) (838 SE2d 888) (2020). Whether sufficient evidence was introduced turns on the evidence introduced — not a critique of what might have been.

Therefore, viewing the evidence in a light most favorable to the verdicts and deferring to the jury's assessment of the weight and credibility of the evidence, we find the evidence sufficient to authorize a rational trier of fact to find Hall guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson*, 443 U. S. at 319 (III) (B).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Peterson, Warren, and Ellington, JJ., concur.*

DECIDED APRIL 6, 2020.
Murder. Newton Superior Court. Before Judge Benton.
*Jennifer F. Arndt*, for appellant.
*Layla H. Zon, District Attorney, Amber R. Bennett, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.