**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 25, 2022**

# In the Court of Appeals of Georgia

A22A0802. CLARKE v. THE STATE.

PIPKIN, Judge.

A Gwinnett County jury found Oniel Warren Clarke guilty of fraud in obtaining food stamps. Following the denial of his motion for new trial, Clarke appeals, arguing only that the evidence is insufficient to support the verdict. We disagree and affirm.

When evaluating the sufficiency of evidence to support a conviction, we view the evidence presented at trial in the light most favorable to the jury's verdict and ask whether "any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Crucially, "our limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the

evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." (Citation and punctuation omitted.) *Sloans v. State*, 304 Ga. 363, 364-365 (1) (818 SE2d 596) (2018).

So viewed, the evidence at trial shows that, from 2011 to 2015, Clarke received public assistance in the form of food stamps through the Georgia Department of Family and Children Services ("DFCS"). To access his benefits, Clarke was issued an EBT card bearing his name, and the card was mailed to his home address. Between March 2013 and January 2015, Clarke received $16,364 in food stamp benefits. State policy required Clarke to renew his certification for public assistance every six months by confirming the accuracy of detailed personal information contained in his original application for benefits, including the name, birth date, and social security number of each person living in the home; monthly household income and expenses; employment information for individuals living in the home; and school information for minors living in the home. Clarke submitted renewal applications in January 2013, August 2013, February 2014, and July 2014, and in each application, Clarke certified as to "job income" that "no one in [his] home has this kind of income[.]" At trial, Clarke's wife testified to the accuracy of personal information contained in the renewal applications and supporting documents, including the birth dates and social

2

security numbers for herself and her and Clarke's children; the bank at which their oldest child maintained a checking account; the amount of the monthly payment for her and Clarke's mortgage; and the college attended by their oldest child in 2014.

In February 2015, based on DFCS's suspicion that Clarke's wife had unreported income, the Department of Human Services began investigating Clarke. The assigned investigator examined Clarke's renewal applications and supporting documentation.[1] Among the documents was a February 2014 letter from the employer of Clarke's wife purporting to verify that Clarke's wife was no longer employed. When the investigator contacted the employer, however, she learned that Clarke's wife was still employed; the investigator also noted that both the February 2014 letter and the income verification provided to the investigator by the employer were purportedly signed by the same person but the signatures on the documents were "significantly different."

Clarke was indicted for five counts of fraudulently obtaining public assistance based on his act of obtaining food stamps by failing to disclose his wife's

---

[1] The investigator testified that, when she began looking into Clarke's file, Clarke's initial application for benefits and subsequent renewal applications dated before 2013 had been purged from DFCS's system.

employment in violation of OCGA § 49-4-15 (a).[2] At trial, Clarke's wife testified that she works as an anesthesiologist and earned approximately $275,000 in 2012, $289,000 in 2013, and $180,000 in 2014; she also works as an associate professor of anesthesiology at Emory University earning approximately $220,000 per year. She did not know that Clarke had applied for public assistance until she was questioned by her employer; she further confirmed that the name of the person who signed the February 2014 letter purporting to verify her unemployment was, in fact, the business administrator at her place of employment, but she indicated that the person was not a doctor, contrary to the letter's signature line. Clarke's wife testified that when she confronted Clarke, he did not deny obtaining public assistance and instead indicated that he would "fix it." Finally, Clarke's wife denied that she applied for any type of public assistance.

Clarke's sole argument on appeal is that the evidence recounted above is

---

[2] OCGA § 49-4-15 (a) (1) provides that "[a]ny person who by means of . . . failure to disclose information . . . obtains . . . food stamps . . . to which he or she is not entitled" is guilty of a felony where the total value of the food stamps fraudulently obtained exceeds $1,500.

insufficient to sustain his conviction.[3] Though he concedes that the renewal applications did not disclose his wife's income and does not dispute his ineligibility for public assistance, Clarke asserts that the State failed to prove that he was the person who obtained the food stamps.[4] To that end, Clarke notes the lack of "forensic testimony" establishing that the renewal applications were submitted "from a computer or an account linked to Clarke." He also challenges the State's failure to prove that he received the EBT card or to place him at locations where the EBT card was used. These arguments miss the mark. "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." (Citation and punctuation omitted.) *Sloans*, 304 Ga. at 365 (1). Indeed, "[w]hether sufficient evidence was introduced turns on the evidence introduced — not a critique of what might have been." *Hall v. State*, 308

---

[3] Although Clarke appears to challenge the sufficiency of the evidence for all of the counts of which he was found guilty, he was sentenced on only one count, and the remaining counts were merged. Clarke's "challenge as to the merged counts is moot, and we limit our sufficiency review to the one count for which he was convicted." *Golden v. State*, 310 Ga. 538, 540 (1) n.2 (852 SE2d 524) (2020).

[4] While Clarke also asserts that the State failed to prove that he used the fraudulently obtained benefits, the plain language of OCGA § 49-4-15 (a) (1), the statute Clarke was charged with violating, makes clear that use of the benefits is not an element of the crime.

Ga. 475, 478 (841 SE2d 672) (2020). And here, the State presented strong circumstantial evidence of Clarke's guilt.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "But not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable." (Citation and punctuation omitted.) *Hamilton v. State*, 309 Ga. 1, 5-6 (2) (843 SE2d 840) (2020). The evidence against Clarke showed that the EBT card, as well as a replacement card, was issued in Clarke's name and mailed to his home address; that detailed and accurate personal information available only to Clarke and his family members was submitted to DFCS on multiple occasions; and that a forged letter bearing the name of the business administrator for his wife's employer was submitted to DFCS. Clarke's wife testified that, when confronted, Clarke did not deny receiving food stamps but instead indicated that he would "fix it," and she specifically denied applying for or obtaining the benefits. While Clarke seeks to resurrect the flimsy defense he passingly asserted at trial — that is, that some unidentified third party was responsible for obtaining food stamps in his name — this "hypothesis" is patently

6

unreasonable in light of the evidence against him, and the jury was authorized to reject it. See id. at 6 (1) ("The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury[.]") (citation and punctuation omitted). And we have no trouble concluding that the evidence at trial, viewed appropriately, was sufficient to enable a rational trier of fact to find Clarke guilty beyond a reasonable doubt of the crime of which he was convicted.

*Judgment affirmed. Rickman, C. J., and Miller, P. J., concur.*